IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| RICHARD WARREN TINNELL & | ) | CASE NO. BK09-80160-TLS |
| SHANNON MARIE TINNELL, | ) | |
| | ) | CH. 13 |
| Debtor(s). | ) | |

ORDER

      Hearing was held in Omaha, Nebraska, on May 11, 2009, on the objection to confirmation of the debtors' Chapter 13 plan by the State of Nebraska, Department of Health & Human Services (Fil. #22). Trinh P. Tran appeared for the debtors and Ronald L. Sanchez appeared for the State of Nebraska. The debtors have filed a response and evidence, and the matter is now ready for decision.

      The objection is overruled.

      The State of Nebraska, Department of Health & Human Services ("DHHS") filed a priority claim against Shannon Tinnell and objects to the plan because it does not address that claim. The claim is in the amount of $1,223 for prescription medicine provided to Richard Tinnell by the State on an outpatient basis in January, March, and May 2007.[1] DHHS asserts that it established Mrs. Tinnell's liability for the cost of the medicine under state law and administrative regulations, and

---

[1] DHHS paid for the medicine pursuant to Neb. Rev. State. § 83-380.01:

Upon the discharge from a treatment facility, an indigent person who has received mental-health-board-ordered treatment may file an affidavit with the Department of Health and Human Services or the mental health board requesting that prescription medicine which the regional center treating psychiatrist or the patient's treating physician has prescribed as necessary for the patient's mental health treatment be provided to him or her. Such affidavit shall include the following: (1) That the patient qualifies as an indigent person who is unable to pay under the same standards of ability to pay as set forth in sections 83-363 to 83-380; and (2) that such prescription medicine has been prescribed by the regional center's treatment psychiatrist or the patient's treating physician as necessary for the patient's mental health treatment. The mental health board shall refer such requests it receives to the Department of Health and Human Services and the department shall provide such prescription medicine as may be necessary for such former patient's mental health treatment so long as he or she remains an outpatient and his or her treating physician continues to prescribe and certify that such prescription medicine is necessary for the patient's mental health treatment and he or she continues to be an indigent person as determined under the same standards of ability to pay as set forth in sections 83-363 to 83-380.

believes the debt is a domestic support obligation as that term is defined in the Bankruptcy Code.[2] Claims for domestic support obligations are given first priority under § 507(a)(1), and are excepted from discharge under § 523(a)(5) and § 1328(a)(2).

In response to DHHS, Mrs. Tinnell attests by affidavit that she was "physically separated" from her husband during the first half of 2007. At that time, she worked in a hospital, earning an annual salary of $23,000 to support herself and two children. She was billed by DHHS for the medications provided to her husband, but questioned the charges and was told that she had received the bill in error. She was not aware that DHHS was assessing liability for Mr. Tinnell's medications costs to her, nor did DHHS contact her at any time for financial information from which to make such an assessment. *See* Aff. of Shannon Tinnell (Fil. #43).

To establish that it holds a priority claim based on a domestic support obligation, DHHS must satisfy four elements: (1) the payee of the obligation be either a governmental unit or a person with a particular relationship to the debtor or to a child of the debtor, as defined in paragraph (A); (2) the nature of the obligation must be support, as defined in paragraph (B); (3) the source of the obligation must be an agreement, court order, or governmental determination, as defined in

---

[2]*See* 11 U.S.C. § 101(14A):
    (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is —
        (A) owed to or recoverable by —
            (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
            (ii) a governmental unit;
        (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
        (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of —
            (i) a separation agreement, divorce decree, or property settlement agreement;
            (ii) an order of a court of record; or
            (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
        (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

paragraph (C); and (4) the assignment status of the obligation must be consistent with paragraph (D). *Wisconsin Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 613 (E. D. Wis. 2008); *Levin v. Greco (In re Greco)*, 397 B.R. 102, 106 (Bankr. N.D. Ill. 2008).

Here, DHHS is a governmental unit and is the payee of the debt, so the first element is met. Likewise, DHHS holds the debt directly, not via an assignment, so the fourth element is met. As to the second element, case law holds that debts payable to third parties may be support obligations under the Bankruptcy Code. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir. 1983). Medicines and medical care are considered "support."[3] 73 Am. Jur. 2d *Support of Persons* § 1; *Draper v. Draper*, 790 F.2d 52 (8th Cir. 1986) (the medical expenses of debtor's children are in the nature of support); *In re Olson*, 200 B.R. 40 (Bankr. D. Neb. 1996) (finding, under the facts of the case, that divorced debtor's obligation to pay ex-wife's medical expenses was non-dischargeable). Accordingly, DHHS has met the second element.

The third element, however, is at issue. It requires that the debt arise from "a determination made in accordance with applicable nonbankruptcy law by a governmental unit" that was or could have been made pre- or post-petition. DHHS argues that it has made such a determination.

Nebraska law provides a mechanism for state-run treatment facilities to recover the costs of patient care, either from the patient or from his or her relatives.[4] Specifically, DHHS "must assess against the client or his/her legally responsible relatives all or that part of the cost as they are able to pay, in the judgment of [DHHS]." 202 Neb. Admin. Code ch. 1, § 004.01; *see also* Neb. Rev. Stat.

---

[3]The BAPCPA amendments that added § 101(14)A and altered §§ 523(a)(5) and (15) did not change the standard for whether an obligation is in the nature of support. *In re Dankert*, Case No. BK07-40109-TJM, 2007 Bankr. LEXIS 3632, at *5 (Bankr. D. Neb. Sept. 27, 2007).

[4]*See* Neb. Rev. Stat. § 83-364:
> When any person is admitted to a state institution or other inpatient treatment facility pursuant to an order of a mental health board under the Nebraska Mental Health Commitment Act or the Sex Offender Commitment Act or receives treatment prescribed by such institution or facility following release or without being admitted as a resident patient, the patient and his or her relatives shall be liable for the cost of the care, support, maintenance, and treatment of such person to the extent and in the manner provided by sections 83-227.01, 83-227.02, 83-350, and 83-363 to 83-380.

The statute's implementing regulations state: "The client and his/her legally responsible relatives are liable for the cost of the care, support, maintenance, and treatment of the client to the extent and in the manner provided in 202 Neb. Admin. Code ch. 1, § 001." 202 Neb. Admin. Code ch. 1, § 004 (2009).

§ 83-366. When DHHS determines that a patient is unable to pay the entire cost of his treatment, DHHS then determines the ability of the patient's relatives[5] to pay the cost:

> In making this determination, the department shall consider the relative's taxable income reportable under Nebraska law . . . . At the request of the relative, the department shall also consider other relevant factors in the interest of avoiding undue hardship. Such factors may include the relative's age, provision for his retirement years, his assets, his liabilities, the number of his dependents, and their mental and physical condition and educational requirements.

Neb. Rev. Stat. § 83-369. DHHS may also consider factors such as average net monthly income, monthly liabilities, and federal poverty guidelines in the interest of avoiding undue financial hardship to the relative. 202 Neb. Admin. Code ch. 1, § 008.03.

To do so, DHHS requests financial information from the relative, including, at a minimum, the relative's state tax return and a completed financial questionnaire. 202 Neb. Admin. Code ch. 1, § 005. The relative has 20 days from the date of the request to submit the information to DHHS; if such information is not furnished, DHHS deems the relative able to pay the full cost of the patient's care or treatment. *Id.*; *see also* Neb. Rev. Stat. § 83-370.

The DHHS employee responsible for overseeing the billing and collection of Mr. Tinnell's account attests that Mrs. Tinnell's liability "has been established by DHHS in accordance with Nebraska's Cost of Patient Care statutes at Neb. Rev. Stat. section 83-363 through Neb. Rev. Stat. section 83-380.01 and state regulations at 202 Nebraska Administrative Code section 1-001 through section 1-013." Aff. of Lynette Wells, at ¶ 3 (Fil. #27). "Pursuant to that state law, DHHS determined that Debtor Shannon Marie Tinnell was liable for the full cost of the medicine provided to Debtor Richard Warren Tinnell by [the Norfolk Regional Center] in 2007." *Id.*

There is no evidence in the record regarding how DHHS came to that determination, such as what financial information it considered, or when the determination was made. The administrative regulations require the determination to be reviewed at least annually, and at any time when DHHS believes it is appropriate to do so, or when the liable relative requests a redetermination and there is a substantial, permanent change in income or assets. Neb. Rev. Stat. § 83-373; 202 Neb. Admin. Code ch. 1, § 008.04. As noted above, Mrs. Tinnell states that DHHS did not request financial information from her at any time, so it is unclear how DHHS reached its determination that she could pay Mr. Tinnell's medical costs in full. Moreover, one might think that notice of a client's or legally responsible relative's bankruptcy filing might cause DHHS to consider that a redetermination of ability to pay may be warranted.

---

[5]The term "Legally Responsible Relative" means the client's spouse. 202 Neb. Admin. Code ch. 1, § 002.

Because the evidentiary record currently before the court does not support DHHS's position that it holds a domestic support obligation claim against Mrs. Tinnell, the objection to confirmation shall be overruled.

IT IS ORDERED: The objection to confirmation of the debtors' Chapter 13 plan by the State of Nebraska, Department of Health & Human Services (Fil. #22) is overruled.

DATED:  June 12, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Trinh P. Tran
    Ronald L. Sanchez
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.